IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 4:22-cv-1012 |
| | ) |
| LJLD, LLC, dba DEBRECHT PROPERTIES and | ) |
| WESTMINSTER PROPERTIES, LLC, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| BRIDGEWATER APARTMENTS V, LLC, fna | ) |
| FORDYCE MANOR, LLC, | ) |
| | ) |
| Rule 19 Defendant. | ) |
| _____ | ) |

## **COMPLAINT**

The United States of America alleges as follows:

### **NATURE OF THE ACTION**

1.  The United States brings this action to enforce the Fair Housing Act, as amended

("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.200-

205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-

12189; the Title III implementing regulations, 28 C.F.R. §§ 36.401, 36.406; and the ADA

Standards for Accessible Design, 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards").  As

set forth below, the United States alleges that Defendants LJLD, LLC and Westminster

Properties, LLC—the owners, developers, and builders of an apartment complex comprising

three buildings and 28 FHA-covered units (together "Defendants")—have discriminated against

persons with disabilities by failing to design and construct covered multifamily dwellings and associated places of public accommodation to be accessible to persons with disabilities.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 3612(o), 42 U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

3.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District and a substantial part of the property that is subject to the action is situated in this District.

## SUBJECT PROPERTY

4.  Defendants LJLD, LLC and Westminster Properties, LLC have participated in the design, construction, or design and construction of the following property (the "Subject Property"):

5.  Bridgewater Residences Apartments is an apartment complex located at 19, 21, and 23 Kassebaum Lane, St. Louis, Missouri,  63129.  The apartment complex has one three-level 36-unit building and two three-level 24-unit buildings.  There are a total of 28 ground-level units comprised of two different styles of two-bedroom/two-bathroom units referred to as Type A and Type B.  One of the Type B ground-level units has been used as a management/leasing office. None of the buildings has an elevator.  The property's amenities include a leasing office, a management office, a mail center, a dumpster facility, a dog park, and a pet litter station.  The property was built for first occupancy in 2016.

## DEFENDANTS

6.  Defendant LJLD, LLC ("LJLD"), Charter No. LC1129987, is a construction and development company based in St. Louis, Missouri.  Its business address is 11565 New London, St. Louis, MO  63141.  LJLD developed the Subject Property and has had an ownership interest in the Subject Property.  LJLD is an active, member-managed for-profit Missouri limited liability company formed on or about March 28, 2011.  Debrecht Properties is a fictitious name of LJLD. LJLD was involved in the design and construction of the covered multifamily dwelling units at the Subject Property.

7. Defendant Westminster Properties, LLC ("Westminster Properties"), Charter No. LC001451765, is a real estate development company based in St. Louis, Missouri.  Its business address is 7701 Forsyth Boulevard, Suite 800, St. Louis, MO  63105.  Westminster Properties was involved in the development of the Subject Property and has had an ownership interest in at least a three-level 36-unit building and a three-level 24-unit building at the Subject Property. Westminster Properties is an active, member-managed for-profit Missouri limited liability company formed on or about June 23, 2015.  Westminster Properties was involved in the design and construction of the Subject Property.

## RULE 19 DEFENDANT

8.  Defendant Bridgewater Apartments V, LLC ("Bridgewater"), Charter No. LC1170325, formerly known as Fordyce Manor, LLC is an active, member-managed for-profit Missouri limited liability company formed on or about September 15, 2011.  Its business address is 73 Lake Forest Drive, St. Louis, MO  63105.  On or about May 17,  2017, Fordyce Manor, LLC changed its name to Bridgewater Apartments V, LLC.  Bridgewater has an ownership and management interest in the Subject Property and, in that capacity, is named as a necessary party

to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

**FACTUAL ALLEGATIONS**

**<u>Fair Housing Act Allegations</u>**

9.  The Subject Property described above was designed and constructed for first occupancy after March 13, 1991.

10.  The Subject Property described above is a "dwelling" and contains "dwellings" within the meaning of 42 U.S.C. § 3602(b).

11.  All of the ground-level units at the Subject Property described above are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f).

12.  The covered multifamily dwellings at the Subject Property described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

13.  The United States reviewed plans, accessibility reports, measurements, photos, and other publicly available materials concerning the Subject Property that show internal, inaccessible features at covered dwelling units, including, but not limited to, thermostats mounted at inaccessible heights, inaccessible routes through covered dwelling units, and inaccessible doors and bathrooms.  The plans, reports, measurements, photos, and other publicly available materials also show inaccessible features in the common use areas, including but not limited to, excessive slopes and protruding objects along route paths to the public street and onsite amenities, barriers at primary entrance doors, inaccessible bathrooms, and an inaccessible management office, mail center, dumpster facility, and dog park.

14.  The following is an illustrative, but not exhaustive, list of inaccessible features

created and caused by Defendants LJLD, LLC and Westminster Properties, LLC in the

development and construction of the Subject Property.

15. The inaccessible features at Bridgewater Residences Apartments include, but are not

limited to:

a. barriers at amenities provided onsite, such as the mail center, dumpster facility,
pet litter station, and dog park, including the lack of an accessible route from
units to the onsite amenities, and amenities mounted at heights too high for
wheelchair users to reach from a seated position;

b. barriers on the walkways from covered dwelling unit entry doors to onsite
amenities such as the mail center, dumpster facility, and dog park, and to the
management office and to the public street, including running slopes[1] and cross
slopes that are too steep to allow wheelchair users to traverse safely.  For
example, there are running slopes that are greater than 5% without handrails,
cross slopes greater than 2%, and curb ramps with running slopes greater than
8.33% and cross slopes greater than 2%;

c. thermostats are mounted higher than 48 inches in covered dwelling units, which
is too high for wheelchair users to reach from a seated position.  For example,
there are thermostats mounted 55 inches above the finished floor;

---

[1]  A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is
perpendicular to the direction of travel.  ICC/ANSI A117.1-2003.  Running and cross slopes are measured in a ratio
of rise to run (or height to length).  "For example, if a principal entrance is ten feet from a [designated accessible
parking spot], and the principal entrance is raised one foot higher than the [designated accessible parking spot], then
the slope is 1/10 X 100 = 10%."  HUD's Fair Housing Act Design Manual, published by HUD in 1996, updated in
1998, 1.2.

d.  routes into and through covered dwelling units that are too narrow, severely impacting the ability of wheelchair users to pass through.  For example, passageways are less than 36 inches wide;

e.  patio doors in covered dwelling units that have less than a nominal 32-inch clear opening width, providing a clear opening width of only 29 inches;

f.  interior sliding door track thresholds at patio doors in covered dwelling units have changes in level greater than 1/4 inch without a bevel, which severely impacts the ability of wheelchair users to traverse safely;

g.  insufficient space in covered dwelling unit bathrooms to allow wheelchair users to enter the bathroom and close the door.  For example, there is less than 30-inch by 48-inch clear floor space in bedroom-connected bathrooms outside the in-swing of the door;

h.  barriers at accessible routes, including exposed undersides of staircases in breezeways and structures at the mail center that protrude too far and too low into the circulation space and could injure persons with visual impairments using the route.  For example, staircases in breezeways and structural railings at the mail facility protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

i.  barriers at common use doors in the management office, including knob hardware and twisting-style locking hardware rather than lever-style hardware, which makes them difficult to operate or open; common use doors that provide less than 32" clear opening width; and common use doors without openers that have less than 18 inches of clear maneuvering space at the pull-side, latch side, which

severely impacts the ability of wheelchair users to maneuver through the door. For instance, the door in the management office has only 5 inches of clear maneuvering space at the pull-side, latch-side, and has knob hardware; and

j.  barriers to accessible parking, including a lack of an accessible route from parking to covered dwelling units.

### ADA Allegations

16.  The leasing office and the leasing office bathroom for use by potential renters at the Subject Property and their surrounding areas were designed and constructed for first occupancy after January 26, 1993, and they are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.  These areas, therefore, are required to meet the accessibility requirements of the ADA Standards.

17.  The leasing office and the bathroom for use by potential renters at the Subject Property and their surrounding areas are not readily accessible to and usable by individuals with disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1).  This office, bathroom, and surrounding area fail to comply with the ADA Standards.

18.  The inaccessible features at the leasing offices and the bathrooms for use by potential renters at the Subject Property include, but are not limited to:

a.  a step on the route to the leasing office;

b.  parking that lacks required accessibility features, signage, and a striped access aisle for van-accessible parking;

c.  doors with knob hardware rather than lever-style hardware, twisting lock mechanisms, less than 32 inches clear opening width, and less than 18 inches

clear maneuvering space at the pull-side, latch side, making them difficult to operate and difficult to maneuver through for a wheelchair user; and

d.  bathrooms for use by potential renters that lack grab bars around the toilet, clear floor space under the lavatory for a forward approach, a 60-inch clear-turning-radius space or a T-turn space, and a toilet seat that is 17 inches or higher above the floor, all of which severely impact the ability of a wheelchair user to operate and maneuver within the bathroom.

### HUD Complaint and Charge of Discrimination

19.  Metropolitan St. Louis Equal Housing and Opportunity Council ("EHOC") is a non-profit housing advocacy corporation organized under the laws of Missouri.  EHOC works to fight illegal housing discrimination through education, outreach, counseling, investigation, and enforcement.

20.  On or about October 29, 2016, EHOC conducted an on-site accessibility inspection of the Subject Property after reviewing the construction plans for the Subject Property and advertisements for the property.

21.  On June 19, 2017, EHOC filed a timely complaint with the U.S. Department of Housing & Urban Development ("HUD") alleging that Defendant LJLD, LLC violated the Fair Housing Act.

22.  EHOC's complaint was later amended to add Defendant Westminster Properties, LLC and Rule 19 Defendant Bridgewater V, LLC.

23.  A HUD-retained consultant conducted an on-site accessibility inspection of the Subject Property and identified inaccessible features, including, but not limited to, inaccessible

routes to covered units and public and common-use areas, thermostats mounted at inaccessible heights, inaccessible routes through the units, inaccessible doors, and inaccessible bathrooms.

24.  In accordance with 42 U.S.C. § 3610, the Secretary of HUD completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.  Based upon the information gathered in the investigation, the Secretary determined under 42 U.S.C. § 3610(g)(1) that reasonable cause existed to believe the Defendants had violated the Fair Housing Act.

25.  On April 28, 2022, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2)(A), charging the Defendants with engaging in discriminatory housing practices on the basis of disability.  Specifically, HUD's Charge of Discrimination alleged that the Defendants' discriminatory policies and practices regarding the design and construction of the Subject Property violated the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).  HUD's Charge of Discrimination named Rule 19 Defendant Bridgewater V as a necessary party for relief.

26.  On May 4, 2022, Complainant EHOC elected under 42 U.S.C. § 3612(a) to have the claims in the HUD Charge resolved in a civil action filed in federal district court.  On May 6, 2022, the HUD Administrative Law Judge issued a Notice of Election to Proceed in United States District Court.

27.  Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action under 42 U.S.C. § 3612(o).

## FAIR HOUSING ACT CLAIMS

28.   The United States re-alleges and incorporates by reference the allegations set forth above.

29.  The conduct of Defendants LJLD, LLC and Westminster Properties, LLC described above violates 42 U.S.C. § 3604(f)(1), (f)(2), and (f)(3)(C).

30.  The Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.  the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by disabled persons in wheelchairs;

    c.  all premises within such dwellings contain the following features of adaptive design:

        i.  an accessible route into and through the dwelling;

        ii.  thermostats and other environmental controls in accessible locations; and

        iii.  usable bathrooms, such that an individual using a wheelchair can maneuver about the space.

31.  The Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.  discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection

with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and

24 C.F.R. § 100.202(b); and

    c.  failed to design and construct dwellings in compliance with the accessibility and

adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R.

§ 100.205.

32.  The conduct of the Defendants described above constitutes:

    a.  a pattern or practice of resistance to the full enjoyment of rights granted by the

FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

    b.  a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-

3619, which denial raises an issue of general public importance, within the

meaning of 42 U.S.C. § 3614(a).

33.  Complainant EHOC and other persons who may have been the victims of

the Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. §

3602(i), and may have suffered injuries because of the conduct described above.

34.  EHOC's resources were diverted and its mission was frustrated due to the

discriminatory conduct of the Defendants.  The Defendants' discriminatory housing practices

have impaired and continue to impair EHOC's efforts to ensure housing opportunities as

guaranteed by the FHA.  The United States seeks damages to compensate EHOC for its diversion

of resources and frustration of mission caused by the Defendants' discriminatory conduct.

35.  The conduct of the Defendants described above was intentional, willful, and taken in

disregard of the rights of others.

## ADA CLAIMS

36.  The United States re-alleges and incorporates by reference the allegations set forth above.

37.  The Defendants violated Title III of the ADA by designing and constructing places of public accommodation, including a leasing office for multifamily dwellings and bathrooms for use by prospective renters, without ensuring that these places of public accommodation are readily accessible to persons with disabilities, except where it is structurally impractical to do so, as required by 42 U.S.C. § 12183(a)(1).

38.  The conduct of the Defendants described above constitutes:

a.   a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

b.   unlawful discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

39.  Persons who may have been victims of the Defendants' discriminatory conduct are persons aggrieved under 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of the conduct described above.

40.  The conduct of the Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## OTHER MULTIFAMILY PROPERTIES

41.  The Defendants' pattern or practice of failing to design and construct dwellings, public and common use areas, and associated places of public accommodation in compliance with the FHA and the ADA, as alleged in this complaint, may extend to other multifamily

properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed in the future.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

    a.  Declares that the conduct of the Defendants, as alleged in this complaint, violates the Fair Housing Act;

    b.  Declares that the conduct of the Defendants, as alleged in this complaint, violates the Americans with Disabilities Act;

    c.  Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

        i.  failing or refusing to bring the dwelling units and public and common use areas at covered multifamily properties in which each defendant was or is involved in the design and/or construction into full compliance with the FHA;

        ii.  failing or refusing to conduct FHA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with the FHA;

        iii.  designing or constructing any covered multifamily dwellings and public and common use areas in the future that do not comply with the FHA; and

        iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

d. Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

    i. failing or refusing to bring the public accommodations, including leasing offices, bathrooms for use by prospective renters, and other public use areas, at covered multifamily properties in which each defendant was or is involved in the design or construction, into full compliance with the ADA and the ADA Standards;

    ii. failing or refusing to conduct ADA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

    iii. designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

    iv. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e. Enjoins Defendants and the Rule 19 Defendant from engaging in conduct that impedes any retrofits required to bring the Subject Property, including covered multifamily dwelling units and public and common use areas, into compliance with the FHA and the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the property; and

f.  Awards monetary damages under 42 U.S.C. §§ 3612(o)(3), 3614(d)(1)(B) and

42 U.S.C. §12188(b)(2)(B) to EHOC and to all other persons harmed by the

Defendants' discriminatory practices.

The United States further prays for such additional relief as the interests of justice may require.

Dated: September 26, 2022

Respectfully submitted,

MERRICK B. GARLAND
Attorney General


SAYLER A. FLEMING                    KRISTEN CLARKE
United States Attorney               Assistant Attorney General
Eastern District of Missouri         Civil Rights Division


                                     SAMEENA SHINA MAJEED
                                     Chief


/s/ Regan Hildebrand
REGAN HILDEBRAND                     MEGAN WHYTE DE VASQUEZ
Assistant United States Attorney     Deputy Chief
Bar No. 6326374(IL)                  ANDREA K. STEINACKER
111 South 10th Street, Ste. 20.333   Bar No. 35688(WA)
St. Louis, MO 63102                  Special Litigation Counsel
Phone: 314-539-7703                  Housing and Civil Enforcement Section
E-mail: rhildebrand@usdoj.gov        Civil Rights Division
Bar No. 6326374 (IL)                 U.S. Department of Justice
Bar No. 57438 (MO)                   150 M Street, NE
                                     Washington, DC 20530
                                     Phone: (202) 305-0744
                                     Fax: (202) 514-1116
                                     E-mail: Andrea.Steinacker@usdoj.gov