IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  4:22-cv-1012 |
| | ) | |
| LJLD, LLC dba DEBRECHT PROPERTIES and | ) | |
| WESTMINSTER PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| BRIDGEWATER APARTMENTS V, LLC fka | ) | |
| FORDYCE MANOR, LLC, | ) | |
| | ) | |
| Rule 19 Defendant. | ) | |
| | ) | |

**CONSENT ORDER**

**I.  INTRODUCTION**

1.      The United States initiated this action on September 26, 2022 under 42 U.S.C. § 3612(o) and to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, the FHA's implementing regulations, 24 C.F.R. §§ 100.200-205, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189.  Specifically, the United States' Complaint alleges that Defendants LJLD, LLC and Westminster Properties, LLC ("Defendants")[1] engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct covered multifamily dwellings at Bridgewater Residences Apartments (the "Subject Property") with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and in a manner required by the ADA, 42 U.S.C. § 12183(a)(1). This Consent Order is not an admission of any liability or wrongdoing by Defendants, and it shall not be construed as an admission of any liability or wrongdoing by Defendants. It is understood that this Consent Order is the compromise of disputed claims and that the terms and obligations contained herein are not intended to be, and shall not be, construed as admissions of any liability by Defendants.

---

[1] For purposes of this Consent Order the term "Parties" refers to Plaintiff, Defendants, and the Rule 19 Defendant collectively, the term "Party" refers to Plaintiff, Defendants, and the Rule 19 Defendant individually in the context used, and the term "Order" refers to this Consent Order.

A.      **Defendants**

2.      Defendant LJLD, LLC ("LJLD") is a construction development company based in St. Louis, Missouri.  Its business address is 11565 New London, St. Louis, MO  63141.  LJLD developed the Subject Property and has had an ownership interest in the Subject Property.

3.       Defendant Westminster Properties, LLC ("Westminster Properties") is a real estate development company based in St. Louis, Missouri.  Its business address is 7701 Forsyth Boulevard, Suite 800, St. Louis, MO  63105.  Westminster Properties was involved in the development of the Subject Property and has had an ownership interest in at least a three-level 36-unit building and a three-level 24-unit building at the Subject Property.

B.      **Rule 19 Defendant**

4.       Defendant Bridgewater Apartments V, LLC ("Bridgewater"), formerly known as Fordyce Manor, LLC is an active, member-managed for-profit Missouri limited liability company formed on or about September 15, 2011.  Its business address is 73 Lake Forest Drive, St. Louis, MO  63105.  On or about May 17, 2017, Fordyce Manor, LLC changed its name to Bridgewater Apartments V, LLC.  Bridgewater has an ownership and management interest in the Subject Property and, in that capacity, is a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

C.      **Relevant Requirements of the Fair Housing Act**

5.      The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person with a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

6.      The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).  These features are referred to herein as the "Accessible Design Requirements."

7.      For the purposes of this Consent Order, the parties agree that the Subject Property was designed and constructed for first occupancy after March 13, 1991, and therefore all the ground-floor units in non-elevator buildings at the Subject Property are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B). As such, those

units and the public and common use areas including the accessible pedestrian routes at the Subject Property must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

**D.    Relevant Requirements of the Americans with Disabilities Act**

8.    The ADA, and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A (the "ADA Standards"), that have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA, also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act. 42 U.S.C. §§ 12182(a) and 12183(a)(1).  A rental or sales office for an apartment complex is a "public accommodation" under the ADA.  42 U.S.C. § 12181(7)(E).

9.    For the purposes of this Consent Order, the parties agree that the leasing office for the Subject Property was designed and constructed for first occupancy after January 26, 1993, and therefore the leasing office and the facilities and privileges provided at that office such as bathrooms and public parking are required to be designed and constructed in accordance with the standards promulgated under the ADA.

**E.    Subject Property:  Bridgewater Residences Apartments**

10.    Bridgewater Residences Apartments is an apartment complex located at 19, 21, and 23 Kassebaum Lane, St. Louis, Missouri, 63129.  The apartment complex has one three-level 36-unit building and two three-level 24-unit buildings.  There are a total of 28 ground-level units comprised of two different styles of two-bedroom/two-bathroom units referred to as Type A and Type B.  One of the Type B ground-level units has been used as a management/leasing office.  None of the buildings has an elevator.  The property's amenities include a leasing office, a management office, a mail center, a dumpster facility, a dog park, and a pet litter station.  The property was built for first occupancy in 2016.

**F.    Consent of the Parties to this Order**

11.    The Defendants agree to address the elements that the United States alleges are not in compliance with the Accessible Design Requirements of the FHA and, where applicable, the ADA as set forth herein.

12.    The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o), 3614(a) and 12188(b)(1)(B).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or trial.

13.    As indicated by the signatures appearing below, the parties have agreed to the entry of this Consent Order.

Based on the Court's review of the record and with the agreement of the parties, the Court orders as follows:

## II.  GENERAL INJUNCTION

14.     Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)–(3), and the Americans with Disabilities Act, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

15.     Defendants and the Rule 19 Defendant and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from interfering or preventing the retrofitting ordered herein or the implementation or completion of this Consent Order.  The Rule 19 Defendant agrees to allow access to the public and common use areas of the Subject Property, and access to unit interiors at the Subject Property, for the purpose of planning, evaluating, and performing any action required under this Order to bring the public and common use areas and the unit interiors into compliance with the FHA and the Fair Housing Accessibility Guidelines ("FHA Guidelines") (56 Fed. Reg. 9472 *set seq.* (1991)), and the ADA, and for the purpose of interviewing or meeting with residents or tenants to aid in the implementation or completion of this Consent Order.

## III. RETROFITS AT THE SUBJECT PROPERTY

16.     The United States, as set forth herein and in its Complaint, alleges that the Subject Property does not meet the accessibility requirements of the FHA, the FHA Guidelines, the ADA, and the ADA Standards.  To address the United States' allegations, Defendants, in accordance with the FHA, the FHA Guidelines, the ADA, and the ADA Standards, shall complete the actions and retrofits described in this section and in Appendices A.1 – A.3, and in accordance with the Route and Inspection General Protocol and the Interior Retrofit Inspection Protocol separately agreed to by the United States and Defendants and further described in Section VI, infra.

### A.     General Retrofits to Accessible Routes at the Subject Property

17.     As soon as reasonably possible, but by no later than twelve (12) months from the entry of this Consent Order, Defendants will complete the retrofits to make the accessible routes identified in Appendix A.1 compliant with the FHA and the FHA Guidelines, and where applicable, the ADA and ADA Standards, and in accordance with the Route and Inspection General Protocol.

### B.     Specific Retrofits to Accessible Routes and Retrofits to the Public and Common Use Areas at the Subject Property

18.     As soon as reasonably possible, but by no later than eighteen (18) months from the entry of this Order, Defendants will complete retrofits to the public and common use areas

listed in Appendix A.2 to bring the public and common use areas into compliance with the FHA and the FHA Guidelines, and where applicable, the ADA, ADA Standards, and in accordance with the Route and Inspection General Protocol.

**C.     Retrofits to Covered Multifamily Dwelling Unit Interiors at the Subject Property**

19.     As soon as reasonably possible, but by no later than twenty-four (24) months from the entry of this Order, Defendants will complete all retrofits as described in Appendix A.3 and in the Interior Retrofit Inspection Protocol to the interiors of the covered multifamily dwellings to bring unit interiors into compliance with the FHA and the FHA Guidelines.  Defendants will retrofit the interior of a covered multifamily dwelling unit no later than the first time that unit becomes vacant following the entry of this Order and before that unit is occupied by a new tenant or resident.  Regardless of whether or not a vacancy arises for such retrofitting, however, Defendants will complete retrofitting within twenty-four (24) months from entry of this Order.

20.     Within forty-five (45) days from the entry of this Order, Defendants will provide a notice that is substantially equivalent to Appendix B to residents of ground-floor units at the Subject Property.  The notice will inform residents that (1) the United States alleges that the ground-floor units and public and common use areas do not meet the requirements of the FHA and the FHA Guidelines, and that to settle this lawsuit, Defendants have agreed to perform certain retrofits to the ground-floor dwelling units; (2) the ground-floor units must be retrofitted within twenty-four (24) months of the date of the entry of the Order; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the tenant, as required by Section IV of this Order, infra.

21.     Residents may request in writing that the retrofits described in para. 19, above, be scheduled, and the requests will be granted by Defendants on a first-come, first-served basis.  Defendants must complete the retrofits as promptly as practical, but no later than forty-five (45) days from the date on which the retrofits were requested by a resident on a first-come, first-served basis, with such deadline being subject to para. 55, below, of this Consent Order.

**IV. INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING UNIT INTERIORS AT THE SUBJECT PROPERTY**

22.     Defendants will endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order at the Subject Property.

23.     Westminster Properties and/or Bridgewater will offer any resident of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twenty-four (24) hours consecutively a similarly sized furnished unit at the Subject Property at no cost.  In the event that a similarly sized furnished unit at the Subject Property is not available, Westminster Properties and/or Bridgewater will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s).

Such payment will be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations and food while dislocated.

## V. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT THE SUBJECT PROPERTY

24.     Within sixty (60) days of the entry of this Consent Order, Westminster Properties and/or Bridgewater will provide written notice to all residents at the Subject Property stating that the retrofits required by this Order will be performed to the public and common use areas of the Subject Property, which include unit entrances and accessible routes.  Such notices will conform to Appendix C.  Westminster Properties and/or Bridgewater will certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten days after such distribution.

## VI. NEUTRAL INSPECTOR AT THE SUBJECT PROPERTY

### A.     Neutral Inspector for the Subject Property

25.     Defendants will enter into a contract with one or more neutral inspector(s) approved by the United States ("Inspector") to conduct on-site inspections of the retrofits that have been performed under this Consent Order to determine whether the retrofits have been completed in accord with the specifications in this Order's Appendices A.1–A.3, the Route and Inspection General Protocol, and the Interior Retrofit Inspection Protocol that describe the retrofits for the property.  The Inspector(s) will have expertise in the Accessible Design Requirements of the FHA, and the requirements of the FHA Guidelines, ADA, ADA Standards, and American National Standards Institute ("ANSI") A117.1-1986.

26.     An inspection of the Subject Property will take place within thirty (30) days of the completion  of the retrofits to  the accessible pedestrian routes as set forth in Appendix A.1 and the Route and Inspection General Protocol, within thirty (30) days of the completion  of the retrofits to the public and common use areas as set forth in Appendix A.2, and within thirty (30) days of completion  of the retrofits to the covered multifamily dwelling units as set forth in Appendix A.3 and the Interior Retrofit Inspection Protocol, or as soon thereafter as practicable for each.  Defendants will give the United States at least two (2) weeks' notice of the inspection and will give the United States an opportunity to have its representative present for the inspection.

27.     The inspections of accessible pedestrian routes, public and common use areas, and dwelling units will be conducted by the Inspector in accordance with this Consent Order and the relevant Appendices.  The inspections of the accessible pedestrian routes will also be conducted by the Inspector in accordance with the written Route and Inspection General Protocol separately agreed to by Defendants and the United States, which will be provided to the Inspector.  The inspections of the dwelling units will be conducted by the Inspector in accordance with the written Interior Retrofit Inspection Protocol separately agreed to by Defendants and the United States, which will be provided to the Inspector.

28.     The Inspector will set out the results of each inspection of the Subject Property, including deficiencies, if any, in writing and will send that report to counsel for each of the Parties.  The Inspector will take digital photographs of any deficiencies identified at each Subject Property.  If the inspection indicates that  the required retrofits have not been made as specified in this Consent Order and the relevant Appendices, the Interior Retrofit Inspection Protocol, or the Route and Inspection General Protocol that apply to the Subject Property, the Defendant obligated to correct the deficiency, as set forth herein, will correct  the deficiency within sixty (60) days and will pay for another inspection by the same Inspector to certify that each deficiency has been corrected.  This process will continue until the Inspector certifies that all of the necessary retrofits have been made by the Defendant obligated to correct such deficiency. The United States retains the right to seek enforcement of the obligations and provisions of this Consent Order against any or all Defendants, regardless of which Defendant agreed to fulfill that obligation as referenced in paragraph 51.  Each Defendant will pay for the Inspector's reasonable costs associated with these inspections of the Subject Property, and such payments will be made without regard to the Inspector's findings.  Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect the retrofits made by Defendants in accordance with this Consent Order to ensure compliance; provided, however, that the United States will endeavor to minimize any inconvenience caused by such inspections.

## VII. TRANSFER OF INTEREST IN THE SUBJECT PROPERTY

29.     The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of the Subject Property shall not affect Defendants' continuing obligation to retrofit the Subject Property as specified in this Consent Order.  Should the Rule 19 Defendant sell or transfer ownership of any Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Sections III and VI of this Order, the Rule 19 Defendant will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the Subject Property is subject to this Order, including specifically Defendants' or Rule 19 Defendant's obligations to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address, and telephone number.

## VIII. NO RAISING RENT PRICES

30.     The Rule 19 Defendant, or its agents and affiliated companies, may not raise the rent price of any dwelling unit, or demand any deposit or other fee for a dwelling unit at the Subject Property, solely because of contemplated or completed retrofits in a dwelling unit, accessible route, or public or common use area.

## IX. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

31.     Defendants will maintain, and provide to the United States, the following information and statements regarding properties under construction and any other covered

multifamily dwellings intended to be, or which actually are, developed, built, designed, constructed, or engineered in whole or in part, by any Defendant or by any entities in which any Defendant has a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on properties in which a Defendant is actually involved, not on those properties in which a Defendant bids or expresses an interest, but does not become finally involved:

    a.    the name and address of the property;

    b.    a description of the property and the individual units;

    c.    the name, address, and telephone number of the civil engineer(s) involved with the project;

    d.    a statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements  of the FHA, 42 U.S.C. § 3604(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act, the FHA Guidelines, the ADA, the ADA Standards, and ANSI A117.1-1986;

    e.    The name, address and telephone number of the architect(s) involved with the property;

    f.    a statement from the architect(s) involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements  of the FHA, 42 U.S.C. § 3604(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the Act, the FHA Guidelines, the ADA, the ADA Standards, and ANSI A117.1-1986.

    g.    If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, Defendants will obtain, maintain, and provide to the United States upon request, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the Accessible Design Requirements of the Fair Housing Act and the FHA Guidelines, and the ADA, the ADA Standards, and ANSI A117.1-1986.

    32.    Defendants will take all actions to make the construction of any future construction within the meaning of para. 31 above, fully compliant with the Accessible Design Requirements of the Fair Housing Act, the FHA Guidelines, the ADA, and the ADA Accessibility Standards.  During the term of this Consent Order, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with the FHA, the FHA Guidelines, the ADA, and ADA Standards.

## X. SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

33.     Within sixty (60) days after the date of this Consent Order, Defendants shall deposit in an interest-bearing account the total sum of EIGHTEEN THOUSAND FIVE HUNDRED DOLLARS ($18,500) for the purpose of compensating any aggrieved persons, including but not limited to St. Louis Metropolitan Equal Housing and Opportunity Council ("EHOC"), who may have suffered as a result of the alleged discriminatory housing practices by Defendants.  This money shall be referred to as the "Settlement Fund." Defendants LJLD, LLC and Westminster will each contribute $9,250 to the Settlement Fund to be held and maintained by Westminster Properties and/or Bridgewater in escrow subject to this Consent Order.

34.     Within sixty (60) days of the entry of this Consent Order, Westminster Properties and/or Bridgewater shall publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix D informing readers of the availability of compensatory funds.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in newspapers of general circulation serving the locality in which the Subject Property is located.  The publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday.  Within ten days of each publication date, Westminster Properties and/or Bridgewater shall provide the newspaper containing the Notice to counsel for the United States

35.     Within sixty (60) days of the entry of this Order, Westminster Properties and/or Bridgewater shall send a copy of the Notice to each of the following organizations:

- Paraquad, 5240 Oakland Ave, St. Louis, MO 63110
- Missouri Protection and Advocacy Services, 925 S. Country Club Drive, Suite B, Jefferson City, MO 65109Disability Resource Association, 130 Brandon Wallace Way, Festus, MO 63028

36.     Within six months of the entry of this Order, Westminster Properties and/or Bridgewater shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or present resident at the Subject Property.  Within seven months of entry of this Order, Westminster Properties and/or Bridgewater shall provide to counsel for the United States proof that the Notices have been sent.

37.     The United States shall investigate the claims of allegedly aggrieved persons and make a determination of which persons are aggrieved and whether any amount of damages should be paid to each such person.  The determinations of the appropriate amount of damages shall total no more than EIGHTEEN THOUSAND FIVE HUNDRED DOLLARS ($18,500).  Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest the United States' determination in this or any other proceeding.  Defendants agree as part of the settlement described herein that they will not seek to interfere with or oppose the United States' determinations regarding the aggrieved persons and the appropriate amount of damages paid to each.

38.     Within fifteen (15) days of the United States' final determination, Defendants shall deliver to the United States checks payable to the allegedly aggrieved persons in the

amounts determined by the United States, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the day before the checks are sent to the United States.  In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest.  No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix E.

39.     After the satisfaction of paras. 33 through 38, above, any money remaining in the Settlement Fund, including interest, shall be distributed to the United States Treasury in the form of an electronic funds transfer based on written instructions provided by the United States.

40.     Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

41.     Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XII. EDUCATIONAL PROGRAM

42.     Within thirty (30) days of the entry of this Consent Order, Defendants will provide a copy of this Order to all their agents and employees involved in the design or construction of the Subject Property or in the planning or development of other covered multifamily properties and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix F.

43.     During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant, each new agent or employee involved in the design and construction of any covered multifamily properties will be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix F.

44.     Defendants will also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (Rev. April 1998). Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case will be informed of those portions of the Fair Housing Act that relate to accessibility requirements, reasonable accommodations, and reasonable modifications.

45.     Within ninety (90) days of the date of entry of this Consent Order, Defendants and all their employees and agents whose duties, in whole or in part, involve or will involve primary management authority over the development, design, and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA.  The training will be conducted by a qualified individual unconnected to the Defendants or the Defendants' attorneys.  In advance of the training, each Defendant will submit the name and qualifications of the trainer for approval by the United States.  The Defendant(s) being provided the training shall be responsible to pay the expenses associated with the training.   Defendants will provide to the United States, within thirty (30) days after the training, copies of the training outlines and any materials distributed by the trainers; and certifications executed by Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

### XIII. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

46.     Within ten days of the date of entry of this Consent Order, Defendants with an ownership or management interest in a covered multifamily dwelling property will post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

47.     For the duration of this Consent Order, in all future advertising in newspapers, electronic media, pamphlets, brochures, and other promotional literature regarding the Subject Property or any new covered multifamily dwelling properties that any Defendant may develop or construct, such Defendant will place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

### XIV. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

48.     In addition to all other reporting required herein, within one hundred eighty (180) days after the date of entry of this Consent Order, each Defendant will submit to the United States an initial report concerning the requirements of paras. 42-47, and containing the signed statements of Defendants and their employees and agents who have been provided a copy of the Consent Order under para. 42 and completed the training program specified in para. 45 of this Consent Order.  Thereafter during the term of this Consent Order, Defendants will, on a quarterly basis, submit to the United States a compliance report detailing the retrofitting and inspections of the retrofits at the Subject Property under Sections III–VI.  In addition, each year, on the anniversary of the entry of this Consent Order, the Defendants will submit to the United States a report concerning the requirements in paras. 31 –32 concerning the future design and construction, and containing the signed statements of new employees and agents that, in accordance with para. 43 of this Consent Order, they have received and read the Consent Order and have had an opportunity to have questions about the Consent Order answered, except that the last compliance report will be due sixty (60) days prior to the expiration of the Consent Order.

49.     For the duration of this Consent Order, each Defendant will advise the United States in writing within fifteen (15) days of receipt by them of any fair housing complaint, written or otherwise, against any property owned or managed by them, or against any employees or agents of Defendants working at or for any such property, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Defendants will also provide the United States all information it may request concerning any such complaint.  Defendants will also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

50.     For the term of this Consent Order, each Defendant is required to preserve all records related to this Order, related to the Subject Property, and related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Order.  Upon reasonable notice to a Defendant, representatives of the United States will be permitted to inspect and copy any records of the Defendant or inspect any properties or dwelling units under the control of the Defendant bearing on compliance with this Order at any and all reasonable times; provided, however, that the United States will endeavor to minimize any inconvenience to a Defendant and Bridgewater residents from such inspections.

## XV. AGREEMENT BETWEEN DEFENDANTS

51.     Defendants LJLD and Westminster Properties have entered into an Agreement to ensure that each Defendant carries out all obligations to fulfill the terms of this Consent Order regarding the Subject Property.  A copy of the Agreement is attached as Appendix H and made a part of this Consent Order.

52.     In the event a there is a dispute related to the performance of an obligation under the Agreement or this Consent Order, or a Defendant or Bridgewater interferes or prevents another Defendant from performing an obligation under the Agreement or this Consent Order, a Defendant may seek relief under this Consent Order as set forth in Paragraph 56. The United States retains the right to seek enforcement of the provisions of this Consent Order against any or all Defendants as set forth in the Order.

## XVI. COMPLIANCE TESTING

53.     The United States may take steps to monitor the Defendants' and Rule 19 Defendant's compliance with this Consent Order including, but not limited to, by conducting fair housing tests at any location(s) in which the Defendants' employees or agents conduct rental activities.

## XVII. TERMINATION OF LITIGATION HOLD

54.     The parties agree that, as of the date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above or in the United States' Complaint.  To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described

above, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any Party of any other obligations imposed by this Order.

## XVIII. DURATION AND TERM

55.     This Consent Order will remain in effect for four (4) years after the date of its entry or until the obligation(s) required of Defendants or Bridgewater is completed, whichever is later. If the obligation(s) required by this Consent Order are not completed within four (4) years, Defendants or Bridgewater shall submit, on the third anniversary of the entry of this Order, a report to the Court and the United States describing the unmet obligation(s) and the projected completion date(s). Such Defendants or Bridgewater shall submit a similar report to the Court and the United States every six months thereafter until each unmet obligation(s) is completed, at which point such Defendants or Bridgewater shall submit a report certifying that each obligation(s) has been fulfilled. The Consent Order will expire sixty (60) days after the final report is filed with the Court.

56.     All Parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court.  However, in the event of a failure by a Defendant or Bridgewater to perform, in a timely manner, or to hinder or unreasonably interfere, with any act or obligation required by this Consent Order or to act in conformance with any provision thereof, the United States may move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed or prohibiting the interference with any act, and the prevailing party shall be  awarded damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.  The Defendants and Bridgewater may move the Court to impose the remedies provided by this provision to any dispute among them related to this Consent Order, including to a dispute relating to the Agreement (attached as Exhibit H) or concerning a provision(s) of this Consent Order that applies to them.

## XVIV.   TIME FOR PERFORMANCE

57.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the Defendants and/or the Rule 19 Defendant.


**DONE** and **ORDERED** this  1st day of September  , 2023.


         /s/ Stephen R. Welby
     _____
HONORABLE STEPHEN R. WELBY
United States Magistrate Judge

*FOR THE UNITED STATES:*

SAYLER A. FLEMING
United States Attorney
Eastern District of Missouri

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
CARRIE PAGNUCCO
Chief

*/s/ Regan Hildebrand*

REGAN HILDEBRAND
Assistant United States Attorneys
111 South 10th Street, Ste. 20.333
St. Louis, MO 63102
Phone: (314) 539-7703
E-mail: rhildebrand@usdoj.gov

*/s/ Andrea K. Steinacker*

MEGAN K. WHYTE DE VASQUEZ
Deputy Chief
ANDREA K. STEINACKER
Special Litigation Counsel
ROSHNI SHIKARI
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Tel: (202) 532-3900; Fax: (202) 514-1116
Andrea.Steinacker@usdoj.gov
Roshni.Shikari@usdoj.gov

*FOR LJLD, LLC:*

Larry Debrecht
*Authorized representative of LJLD, LLC*

*/s/ Jack B. Spooner*
Jack B. Spooner #38382
SPOONER LAW, LLC
34 North Brentwood Blvd., Suite 210
St. Louis, Missouri 63105
Phone: (314) 725-4300
Facsimile: (314) 725-4301
Email: jbs@spoonerlawllc.com

*Attorney for Defendant LJLD, LLC*

14

*FOR WESTMINSTER PROPERTIES, LLC*

Robert Devereux
*Authorized representative of Westminster Properties, LLC*


*/s/ John F. Garvey*
STRANCH, JENNINGS, & GARVEY PLLC
John F. Garvey, #35879 (MO)
701 Market Street, Suite 1510
St. Louis, Missouri 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com

*Attorney for Defendant Westminster Properties, LLC*


*FOR BRIDGEWATER APARTMENTS V, LLC*


Bridget O'Flynn Hof
*Authorized representative of Bridgewater Apartments V, LLC*


*/s/ Thomas J. Magee*
Thomas J. Magee No. 32871
HEPLERBROOM LLC
701 Market Street, Suite 1400
St. Louis, MO 63101
314-241-6160
314-241-6116 Fax
tmagee@heplerbroom.com

*Attorney for Rule 19 Defendant, Bridgewater Apartments V, LLC*

*FOR WESTMINSTER PROPERTIES, LLC*

_____
Robert Devereux
*Authorized representative of Westminster Properties, LLC*


/s/ John F. Garvey
STRANCH, JENNINGS, & GARVEY PLLC
John F. Garvey, #35879 (MO)
701 Market Street, Suite 1510
St. Louis, Missouri 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com

*Attorney for Defendant Westminster Properties, LLC*


*FOR BRIDGEWATER APARTMENTS V, LLC*

Bridget O'Flynn Hof
*Authorized representative of Bridgewater Apartments V, LLC*


/s/ Thomas J. Magee
Thomas J. Magee No. 32871
HEPLERBROOM LLC
701 Market Street, Suite 1400
St. Louis, MO 63101
314-241-6160
314-241-6116 Fax
tmagee@heplerbroom.com

*Attorney for Rule 19 Defendant, Bridgewater Apartments V, LLC*

## APPENDIX A.1

## ACCESSIBLE PEDESTRIAN ROUTE RETROFITS AT BRIDGEWATER RESIDENCES APARTMENTS



## APPENDIX A.1.A

## ACCESSIBLE ROUTE AND RETROFIT MAP



## Bridgewater 055

## Bridgewater 056





## Bridgewater 057

## Bridgewater 058





## Bridgewater 059

## Bridgewater 060





**Bridgewater 253**

**Bridgewater 254**





**Bridgewater 255**

**Bridgewater 256**





**Bridgewater 257**

**Bridgewater 258**





## Bridgewater 259



## Bridgewater 260



## Bridgewater 261



## Bridgewater 262



## Bridgewater 263



## Bridgewater 264



**Bridgewater 295**

**Bridgewater 296**





**Bridgewater 297**

**Bridgewater 298**



**Bridgewater 299**

**Bridgewater 300**





## Bridgewater 337



## Bridgewater 338



## Bridgewater 339



## Bridgewater 340



## Bridgewater 341



## Bridgewater 342



## Bridgewater 361

## Bridgewater 362





## Bridgewater 363

## Bridgewater 364





## Bridgewater 365

## Bridgewater 366





## APPENDIX A.2

## PUBLIC AND COMMON USE RETROFITS AT
## BRIDGEWATER RESIDENCES APARTMENTS

I.      As set forth in the Consent Order and this Appendix, LJLD, LLC and Westminster
Properties, LLC will retrofit the public and common use areas at Bridgewater
Residences Apartments in compliance with the Fair Housing Act, the Accessible
Design Requirements of the FHA, the Fair Housing Accessibility Guidelines
("FHAG"), ANSI A117.1-1986, the Fair Housing Design Manual, and, where
applicable, the ADA, and the ADA Standards.

II.     LJLD, LLC, Westminster Properties, LLC, and Rule 19 Defendant Bridgewater
Apartments V, LLC, will relocate the leasing office/management office currently
located in unit 19-Z, to a location that meets all the requirements of the ADA and the
ADA Standards.

III.    LJLD, LLC and Westminster Properties, LLC will retrofit accessible parking signs
so that they are mounted at a minimum of 60" above the parking surface measure
from the bottom of the sign in compliance with ANSI 1986, Section 4.6.2.

IV.     LJLD, LLC and Westminster Properties, LLC will retrofit access aisles serving
accessible parking spaces so that they are a minimum of 5' wide in compliance with
ANSI 1986, Section 4.6.2.

V.      LJLD, LLC and Westminster Properties, LLC will retrofit the passageways and
circulation spaces in the breezeways underneath the stairs servicing the buildings
with a guardrail or other barrier having its leading edge at or below 27" above the
finished floor to prevent access to areas adjoining an accessible route where the clear
vertical headroom is less than 80" in compliance with ANSI 1986, Section 4.4.2.

VI.     LJLD, LLC and Westminster Properties, LLC will retrofit the Y-shaped support
beams that support the roof of the mail kiosk and raise the roof of the mail kiosk to
provide the clear vertical headroom that is a minimum of 80" in compliance with
ANSI 1986, Section 4.4.2.

VII.    LJLD, LLC and Westminster Properties, LLC will retrofit the mailboxes so that the
key slots for all mailboxes serving ground-floor units are within the reach range of
48" above the ground for a forward approach or 54" above the ground for a parallel
approach in compliance with ANSI 1986, Sections 4.2.5, 4.2.6.

VIII.   LJLD, LLC and Westminster Properties, LLC will retrofit the dog park so that there
is a minimum of 18" clear maneuvering space concrete surface at the latch-side, pull-
side of the gate to the dog park in compliance with ANSI 1986, Section 4.13.6.

IX.     LJLD, LLC and Westminster Properties, LLC will retrofit so that there is a level
5'x5' clear area provided inside the dumpster enclosure to provide turning space to
maneuver into and out of the dumpster enclosure.

X.      LJLD, LLC and Westminster Properties, LLC will relocate the pet litter station so
that it is located on an accessible route in compliance with ANSI 1986, Section 4.3.2.

XI.     LJLD, LLC and Westminster Properties, LLC will retrofit the door hardware on the
exterior side of the primary entry doors so that all ground-level units have lever hardware
in compliance with ANSI 1986, Section 4.13.9.

XII.    LJLD, LLC and Westminster Properties, LLC will, upon request, remove door closers on
unit entry doors, which provide less than 12" clear maneuvering space at the latch-side,
push side at the exterior side of the door.  [See ANSI 1986, Section 4.13.6.]  LJLD, LLC
and Westminster Properties, LLC will install permanent placards that are a minimum of
3" x 4" in size in a conspicuous location on the wall adjacent to the interior side of all
ground-level dwelling unit entrance doors that state "DOOR CLOSERS MAY BE
REMOVED FOR WHEELCHAIR USERS.  CONTACT MANAGEMENT."

APPENDIX A.3

**INTERIOR RETROFITS AT BRIDGEWATER RESIDENCES APARTMENTS**

I.      As set forth in the Consent Order and in this Appendix, LJLD, LLC and Westminster Properties, LLC will retrofit the interiors of the ground-level units at Bridgewater Residences Apartments in compliance with the Fair Housing Act, the Accessible Design Requirements of the FHA, the Fair Housing Accessibility Guidelines, the Fair Housing Design Manual, and with the Interior Retrofit Inspection Protocol.  These units are composed of two types: (1) Apartment 19-O, a standard 2-bedroom, 2-bathroom unit; and (2) Apartment 19-A, a 2-bedroom, 2-bathroom HC unit.  The retrofits for each unit type are listed below in Sections II through V:

II.     LJLD, LLC and Westminster Properties, LLC will make the following retrofits to the 2-bedroom unit types that are of the same type as the unit surveyed at Apartment 19-O (including unit 19-Z):

   A.     Retrofit the door hardware on the exterior side of the primary entry doors so that all ground-level units have lever hardware in compliance with ANSI 1986, Section 4.13.9.

   B.     Retrofit the hallway closet by extending the shelves forward so that they are flush with the interior-side of the doorframe. [FHAG, Req. #3, guide (2). FHDM pp. 3.14]

   C.     Retrofit the toilet in the master bathroom by installing an offset flange to move the location of the toilet to no more than 18.5 inches from the sidewall.  [FHAG Req. 7, Sec. (2)(a)(ii)]

   D.     See Interior Retrofit Inspection Protocol for retrofits at Unit Porch Threshold and Thermostats.

III.    LJLD, LLC and Westminster Properties, LLC will make the following retrofits to the 2-bedroom HC unit types that are of the same type as the unit surveyed at Apartment 19-A:

   A.     Retrofit the door hardware on the exterior side of the primary entry doors so that all ground-level units have lever hardware in compliance with ANSI 1986, Section 4.13.9.

   B.     Retrofit the hallway closet by extending the shelves forward so that they are flush with the interior-side of the doorframe. [FHAG, Req. #3, guide (2). FHDM pp. 3.14]

C.      Retrofit the toilet in the master bathroom by installing an offset flange to move the location of the toilet to no more than 18.5 inches from the sidewall.  [FHAG Req. 7, Sec. (2)(a)(ii)]

D.      See Interior Retrofit Inspection Protocol for retrofits at Unit Porch Threshold and Thermostats.

**APPENDIX B**

**NOTICE TO RESIDENTS**

Dear Resident:

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to retrofit the ground-floor units at Bridgewater Residences Apartments to provide greater accessibility for people with disabilities.  Your unit qualifies for retrofitting to provide greater accessibility.

Although your apartment unit will be retrofitted automatically after your residency ends, we want you to know that you may request to have your apartment modified now at no cost to you.  The actual work will take no longer than ___ days from the date construction begins and we will provide you with another unit in this development or comparable alternative living arrangements during that time.  In scheduling when the repairs will take place, we will take into account your preferences and convenience.

You should be aware that this work must be completed within the next four years, regardless of your intention to stay in your apartment for a longer duration.  Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

## APPENDIX C

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SUBJECT PROPERTY

The federal Fair Housing Act requires that the public and common use areas at complexes such as Bridgewater Residences Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the public and common areas of Bridgewater Residences Apartments can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act.  We welcome persons with disabilities as residents and guests at Bridgewater Residences Apartments.  We are writing this notice to let you know that beginning on _____, 202_, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas.  We expect the process to last approximately _____ weeks, weather permitting.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones along certain pathways to certain ground-floor units.  They will also be making some modifications to the leasing office facility, as well as to other areas, to make them more accessible to persons with disabilities.  We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

The Management

**APPENDIX D**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| LJLD, LLC dba DEBRECHT PROPERTIES and | ) | |
| WESTMINSTER PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| BRIDGEWATER APARTMENTS V, LLC fka | ) | |
| FORDYCE MANOR, LLC, | ) | |
| | ) | |
| Rule 19 Defendant. | ) | |
| | ) | |
| _____ | ) | |

## NOTICE TO POTENTIAL VICTIMS OF ALLEGED DISCRIMINATION AGAINST PERSONS WITH DISABILITIES AT BRIDGEWATER RESIDENCES APARTMENTS

On _____, 2023, the United States and Defendants LJLD, LLC and Westminster Properties, LLC entered into a Consent Order resolving a housing discrimination lawsuit brought by the United States related to the design and construction of the Bridgewater Residences Apartments located at 19, 21, and 23 Kassebaum Lane, St. Louis, MO.  The United States alleges that the ground-floor units and many common use areas (for example, rental offices, routes to amenities, *etc*.) are not accessible to persons with physical disabilities.  As part of the Consent Order, Defendants have agreed to retrofits of the units and common use areas to comply with the Fair Housing Act and the Americans with Disabilities Act at Bridgewater Residences Apartments.

The Consent Order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at Bridgewater Residences Apartments. You or members of your family may be qualified to recover from the Settlement Fund if you or members of your family allege that you:

- were discouraged from living at Bridgewater Residences Apartments because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible; or

- were not informed about, or offered, all available apartment units because of your disability or the disability of someone who would be living with you.

*If you believe you, a co-tenant, a visitor, or others have been harmed as a result of the alleged discrimination at Bridgewater Residences Apartments, please contact the United States Department of Justice at: fairhousing@usdoj.gov or 1-833-591-0291; select option 1 for English, option 4 for housing accessibility for persons with disabilities or the design and construction of accessible housing cases, and option 7 for Bridgewater to leave a message.*

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 4CON, 150 M Street, NE, Washington, DC, 20002, Att: DJ 175-42-266*

**\*\*\* You must call or write no later than 365 days from [the date of entry of the Consent Order] to be eligible for compensation, and your telephone message or letter must include your name, address, and, if possible, at least two telephone numbers where you may be reached.**

26

**APPENDIX E**

**RELEASE OF ALL CLAIMS**

In consideration of and contingent upon the payment of the sum of ($_____ ), pursuant to the Consent Order entered in *United States* v. *LJLD, LLC, et al.*, (E.D. Mo.) between the United States and LJLD, LLC and Westminster Properties, LLC ("Defendants"), I hereby release and forever discharge Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order.  I fully acknowledge and agree that this release of Defendants will be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

(Signature)

NAME:  _____

ADDRESS:  _____

DATE:  _____

**APPENDIX F**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received copies of and have read, or have had read to me, the Consent Order entered between the United States and LJLD, LLC and Westminster Properties, LLC.  I have had all of my questions concerning the Consent Order and the Fair Housing Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)

28

**APPENDIX G**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act and Americans with Disabilities Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act and Americans with Disabilities Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)

29

**APPENDIX H**

AGREEMENT BETWEEN LJLD AND WESTMINSTER PROPERTIES IN THE CASE OF US V. LJLD AND WESTMINSTER PROPERTIES

1. Parties agree to the following remediation and payment for the following:
   a. LJLD Shall be responsible for all remediation as set out in Appendix A.2 for the building commonly known as building #23, including building of ramp and sidewalk adjacent to building as set out in Appendix A.3.
   b. Westminster shall be responsible for remediation measures for buildings #21 and #19 in the following areas:
      i. Work as set out in paragraphs II, III,IV, X, XI, XII in Appendix A.2

   C. LJLD shall be responsible for remediation for:

      i. Work set out in paragraphs V, VI, VII, VIII, IX in Appendix A.2 also in building 19.

      D. Westminster shall be responsible for work in Appendix A.3 for buildings 19 and 21.

2. Parties shall set up an escrow account for the exterior work set out in Appendix A.1 commonly known as the map, except for the work to be done at building #23 by LJLD.  Initial amount from each party into the escrow will be $25,000 payable within 30 days of the signing of the final agreement between the parties.

3. Parties agree to split the cost of the payment to US Government as set out in the Consent Order for $18,500, each party paying $9,250.00